Good morning. May it please the Court. Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Hubert Petrich. Marcy's law introduced a whole host of changes with respect to the parole process. And in total, they made it significantly more difficult and increased the risk of parolees being released, lifers being released on parole. That is an ex post facto violation. The changes Is it a facial ex post facto violation? Given this Court's previous Gilman decision and the recent California Supreme Court decision, I assume we can't find it to be a facial violation, can we? That's correct, Your Honor. Gilman certainly controls that aspect of this, respectfully. He may be wrong, but that's a separate issue. We're bound by it. It only holds that it's likely that that will be the result. Yes. Gilman noted on its face that likely the changes would create a significant In your case, given the finding of the California State court that your client was unlikely to have been the beneficiary of a parole, even if hearings had been advanced, what burden do we suffer under in reviewing it? Don't we have to determine if it's a facial unreasonable determination by the California court? Your Honor, I don't believe the California Supreme Court made that determination in this case. They summarily denied the petition. The only recent decision on this was from the superior court. Right. Go back to the superior court. What did the superior court say with respect to your client's likelihood of benefiting from an advanced hearing? The superior court didn't address that specifically. All they said was that it was not an ex post facto violation because, one, the law, he was always subject to a life term, so that law didn't change his sentence. And, two, that it didn't change the criteria for suitability and release. It made no finding that he would be unlikely to be released within the period. Okay. So if all the superior court did was make determinations of law, I take it is what you're saying, how do we find those to be unreasonable given the unsettled Supreme Court decisions in this area? I think Garner and Morales have settled the law in this area, and they've said that in the parole context, where the changes create a significant risk of prolonging someone's term, that's an ex post facto violation. Neither of the reasons given by the superior court, and we're looking through that as the State court decision, address that, and they're both actually contrary to that, that they didn't rule on that ground. So what that means is under D-2, U.S.C. 2254-D-2, that the decisions are both contrary and an unreasonable application of controlling the Supreme Court precedent, which are Garner and Morales. What ones that no reasonable jurist could reach? That's correct. But didn't the California Supreme Court reach essentially the same conclusion in looking at this unanimously? The California Supreme Court reached a conclusion that Marcy's law was not facially unconstitutional ex post facto violation. That is really nothing different than this Court did in Gilman, so I don't believe that adds very much to the discussion. You need to help me here. So describe for me why your attack in the habeas goes beyond a facial attack. And my understanding is a little bit confusing because the first facial attack is can you just look at the law and say it's unconstitutional. And Gilman and the California Supreme Court at least suggest that's not so. They may be wrong. Second level is to say, well, it may look like it could be constitutional, but in practice it isn't. That's right. And the third level is even in practice if it's constitutional, my guy was somehow denied his individual rights. Which of those claims are you making? We're making the second to you, Your Honor, as applied both in general and in terms of as Marcy's law as applied in practice throughout the whole system is an ex post facto violation. As to that one, which is, let's call it the second one for purposes of discussion, that's precisely the same claim being litigated in the Gilman class action, is it not? That's my understanding. So if that's so and the Gilman petitioners are successful, your client will get the relief he seeks? Presumably, depending on the remedy that the court fashions. Should we wait for Gilman in some way or another before disposing of this case and the other ones in which, as I understand it, all the plaintiffs are members of the Gilman class, petitioners are members of the Gilman class? I think Mr. Petrick, having an individual habeas petition, has the right to litigate this as an individual. So as to the question of whether he has the right, the question is should we defer or should we defer? Maybe there is a doubt about whether he has the right. That's a separate issue we'll have to get to. But should we defer? Scalia. Let me ask the question more politely or less politely than Judge Hurwitz asked it. Wouldn't you rather have your rights decided under 1983 than under habeas, where you have to show that the State court acted not only unconstitutionally, but that it was unreasonable for the State court to act unconstitutionally? Or, as the Court said, and I can't believe it means it, where no reasonable jurist could reach a contrary conclusion, in which case we'd never have a habeas case again? Well, with respect to Mr. Petrick, it's relatively clear that even under the habeas standard, he would be entitled to a de novo look, because the State court's decision was so lacking with respect to analyzing the applicable law and deciding it on grounds that are not part of controlling Supreme Court precedent, that being Gardner and Morales. I think that's where I'm having some difficulty, because if, in fact, you brought a third kind of action in the State court and they turned you down because they didn't think that your individual client had been prejudiced by Marcy's law, as opposed to the class of clients as a whole, aren't we sort of stuck with a deference on that? Yes, you would be. But in 1983, we'd look at all these issues, de novo, after the Gilman class action says whatever it says. That's correct, Your Honor. I mean, let me be more blunt about this, I guess. It's a little strange. We're normally here with the State saying this should be a habeas and subject to all the constraints of AEDPA, and the defendants are saying, oh, no, it's a 1983. And here we've got you've switched sides. And so I'm trying to figure out why it is that 1983 isn't the ---- given the hints the Supreme Court's given us in their footnotes, et cetera, why 1983 isn't a better way to go. There's no question that 1983 might serve Mr. Petrick's purposes. But also, I wasn't ---- I'm not party to the Gilman litigation. I don't know what that evidentiary record looks like. It's possible that Petrick could develop a different evidentiary record in the event that, say, Gilman doesn't go to it. Doesn't get him the relief he wants. That's right. Well, the evidentiary record's already developed in Petrick's case, isn't it? I mean, and we can't develop it here because it's got to be done in State court. Pinholster, I believe, allows ---- I mean, the whole thing of Pinholster is that once you meet the requisites of 20 U.S.C. 2254 D2 as showing that the State court's decision was either contrary to or unreasonable application of Supreme Court precedent, then you not only is the standard different, as they know, but the Petitioner ---- the Federal habeas Petitioner would have an opportunity to develop evidence in the Federal court. He wouldn't be bound by the State court record or ---- and he could develop evidence in the State court ---- in the Federal court, excuse me, in the first instance. But that would be true in an original 1983, would it not? That's correct. But Mr. Petrick is here on a habeas case. But one of the States are ---- and I must admit that I confuse the seven cases, but at least in some of the cases the State is saying, oh, no, we're all ---- we're in the wrong area. This should be a 1983 and not a habeas. And however we resolve that in one of these seven cases may spill over to the other. So that's why I'm asking the question. So it's at least clear that Mr. Petrick, under existing precedent, even Gilman notwithstanding, has the opportunity to develop a record and show that as applied to him and as applied to the class of life prisoners as a whole, Marsh's law is ex post facto. But let me ask you a question about the first one, because this is where I'm having some conceptual difficulty. As applies to the class of life prisoners as a whole, that's already being litigated in Gilman and Mr. Petrick is a class member in that one. That's correct. As applied to him, describe for me what kind of showing he would make other than the Gilman showing. What would he show in an evidentiary hearing, that he's ---- that whatever the legality of the system is to everybody else, he's been so good in prison that he would have gotten relief earlier than the class? I think either one of those showings would be sufficient. That is, he would be entitled at an evidentiary hearing to show that life prisoners as a whole, the law was ex post facto. Right. But we're going to get a binding ruling in Gilman as to that issue.  It's binding because the other guys will appeal it. If your side wins and if the other side wins, then it will be binding on your clients because they're members of the class. Assuming that there's a binding ruling on that question by the time Mr. Petrick goes back to district court to litigate this question, then he would at least have the opportunity to show that as to him. And obviously, it would be a very difficult showing depending on how Gilman comes out or not. That the law disadvantaged him. And that would show individual things. He could show evidence, for example, that people in his situation got to hearings sooner or people factually similar and were released under the old law. I'm not sure that, you know, that obviously would be lots of evidentiary and factual difficulties in proving that, but it is possible. The reason I'm hesitant on these issues is that in the absence of the legal framework that Gilman might set up, I think it sort of turns the district court then into a parole board saying, well, you would have done better had you been heard earlier. And all it can really do is send it back for a hearing to the parole board, and in the meantime, after all this litigation is done, you might have gotten one anyway. So that's the question. I'm not asking a question. I'm just sort of thinking out loud about why procedurally it might be better to remove it. That's true, Your Honor. That's been the case with a whole number of parole questions. And each time some people have gotten relief before the cases were litigated and resolved by an appellate court, but oftentimes the appellate court's resolution also led to releases, too. Thank you. We've got a minute and a half. Go ahead. May it please the Court. Christopher Wrench, Deputy Attorney General, on behalf of Appallee. Petrich is not entitled to AEDPA relief because the State court's rejection of his claim was not contrary to Morales or Gardner and is fully consistent with this Court's decision in Gilman. As the Court has already discussed today, there are procedural barriers to an individual claim even proceeding in this matter due to the pendency of the Gilman class, as well as the fact that there's a lack of habeas jurisdiction, which will be more directly addressed in the cases that follow on calendar today. Let me ask the same question I asked your opponent. Did the superior court do anything except reject the Morrissey's Law attack on its face? It rejected, I would say, it rejected both the facial and an as-applied, because Mr. Petrich, essentially the only as-applied challenge he made factually was I had a parole hearing and Morrissey's Law was applied to me. He offered no additional evidence to the superior court, so the superior court could only reject what it had in front of it, and that was basically a facial challenge, basically that. So does his as-applied, does any as-applied challenge remain? In other words, would he be free now, in 1983, as you suggest, to go in and say at some point, I've been such a good guy, I should have gotten parole, no matter what the system is? It's conceivably in 1983, although he's already doing that as a class member in Gilman. But if it's not found not, Gilman says no to the challenge in general as a class, would he then be free as an individual to file a suit saying that my case is not like the common, my deprivation goes beyond the class deprivation? I would say theoretically maybe, but as a class member who is not able to opt out, the – if Gilman is adjudicated on the merits, he's going to be bound by whatever finding. Sure. Sure. But as we tried to do before, and maybe we could be more precise, there's a facial challenge, there's a systemic challenge in Gilman, if you will. If the system is set up in such a way that it violates the ex post facto clause. And then I guess there's theoretically a challenge that says, even if the system is set up okay, I keep asking for this expedited hearing and I don't get one, and when you look at my case, it's so overwhelming that I should – I would be likely to have gotten relief if I got one. That's the sort of as a – personally as applied challenge. That one would remain after Gilman, wouldn't it? Theoretically. I mean, it would depend on what Gilman says. But most likely that could remain conceptually. However, after the Supreme Court's decision in Swarthout v. Cook, there's really no federal basis to, as Your Honor indicated earlier, for a district court to sort of look at an individual's suitability and, you know, say Mr. Petrich or any other Gilman class member, you know, was going to get paroled sooner. That's really beyond the purview of the Constitution, as well as Gardner-Morales, which did not inject the federal courts into suitability decisions. Let me ask you a technical question. If you're right, what should the district court have done with this petition? It – should it have dismissed it without prejudice? Should it have declined to entertain it? I'm a little concerned about a district court, in effect, barring any subsequent claim that might arise out of this because the class action is pending. We don't want to have contrary adjudications out there. Certainly. I would say the district court first should have dismissed – or a district court in general should have dismissed for lack of habeas jurisdiction. Secondly, with Gilman, it would be a dismissal without prejudice to whatever relief the petitioner might have after whatever the resolution is in Gilman. And specifically to the merits here, the superior court, the two factors it noted, were factors the Supreme Court relied on in Morales. Morales looked at a slew of factors, and a couple of them were the fact that the sentence wasn't changed and the substantive suitability standards were not changed, and the superior court was making reference to that. And the superior court is certainly not required to give a treatise on ex post facto law, and its ultimate conclusion, as the Court alluded to, was well within the standard of Richter being within the scope of reasonable-minded, fair-minded disagreement. But just so that I'm clear, because I was unclear about this at the beginning, you're not contending that the district court, in effect, disposed of any claims that would be solely related to Mr. Pedrick's – in other words, they didn't say, they didn't say, A, it's not unconstitutional, and, B, even if it were, you're the kind of guy who wouldn't have gotten relief with a yearly hearing? No. There's no reference to that in neither the district court or the superior court. It was simply applying Gardner-Morales' clearly established Federal law and rejecting the claim on the merits. If there are no further questions, I'll just wrap up briefly that, with the AEDPA deference here, this Court's decision in Gilman, the California Supreme Court's decision in Vicks, the State court record here – actually, before I do that, let me back up real quick to address the Penholster question. We talked – there was some discussion about the as-applied challenge. At this point, there's really no evidence that Mr. Pedrick can introduce in the – upon any remand or further proceedings here, because the State court record is closed, and Penholster is very clear that the AEDPA question must be addressed on the record presented to the State court. And jumping back, given those other decisions, the State court's decision here was well within the scope of AEDPA, and we'd ask that the district court judgment be affirmed. Thank you. Just two responses. One, the State just said that there is not an as-applied challenge in this case. Of course, Mr. Pedrick filed his petition raising ex post facto grounds, and when you do that, you don't raise it on its face or as applied. And the only thing that's been resolved thus far is the facial challenge. So the as-applied challenge does exist. And as this Court said in Gilman, what you need to make for the as-applied challenge is you need evidence of how the system operates in actual practice. When Mr. Pedrick filed his petition, there was no such evidence because the law was so new. Now there is some. It's being litigated, some in Gilman. There's some evidence past that. The evidence may well show that this petition to advance procedure doesn't operate, as Gilman speculated that it might. And Mr. Pedrick should have an opportunity to present that. Second, with respect to Penholster, again, I respectfully submit the State is misreading that case. Once you've shown on the basis of the State court record that the State court's decision is either unreasonable or contrary to existing Supreme Court precedent, then you are free to develop evidence in Federal court.  Thank you, counsel. Thank you both. The case is targeted to be submitted. Now,
judges: Reinhardt, Noonan, Hurwitz